IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LISA R. HUEY, | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:14-30 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| CAMBRIA COUNTY et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER OF COURT**

**I. INTRODUCTION**

This matter comes before the Court on Defendants' motion to dismiss for failure to state a claim. (ECF No. 6). Plaintiff Lisa R. Huey, in her capacity as Administratrix of the Estate of William H. Sherry, brought a complaint against Defendants Cambria County, William Cramer and John Frank pursuant to § 1983 of the Civil Rights Act for violations of Mr. Sherry's rights under the Eighth Amendment to the United States Constitution. (Compl. ¶ 1).

Defendants Cambria County and Corrections Officer John Frank bring the instant motion to dismiss, asserting that the Fourteenth, not the Eighth, Amendment would apply to the allegations set forth in the complaint. (ECF No. 7 at 5). The motion further states that the allegations in the complaint, even if true, would not be enough to state a claim against Cambria County or John Frank in his official capacity. (*Id.* at 7). Finally, the

1

motion asserts that the complaint fails to state a claim upon which relief may be granted against John Frank in his personal capacity. (*Id*. at 12).

For the reasons given below, the motion to dismiss will be granted. Plaintiff will be granted leave to amend the complaint in order to address the deficiencies spelled out in this opinion.

## II. JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction under 28 U.S.C. § 1331 because the claims were brought pursuant to 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events and occurrences giving rise to the claims arose in the Western District of Pennsylvania and the Defendants reside within the district.

## III. BACKGROUND

### a. Statement of Facts

This case arises from the death of 28-year-old William Sherry, who had been incarcerated at the Cambria County Prison. (*Compl*. ¶ 13). Mr. Sherry had entered the Prison on or about August 1, 2012, on a bench warrant for a probation violation following his failure to pay costs of $250, and for failure to attend a scheduled court hearing. (*Id*. ¶ 14). After realizing that he was being housed with an inmate who had previously broken into his house, Mr. Sherry was placed into a cell in the Disciplinary Housing Unit with the 22-year-old Defendant William Cramer. (*Id*. ¶¶ 15–18). According to the complaint, Defendant Cramer had been transferred to the Cambria County Prison from a State

Correctional Institute facility for a preliminary hearing on charges of aggravated assault by a prisoner, two counts of aggravated assault, three counts of simple assault, and a summary harassment charge, arising from an incident wherein Mr. Cramer allegedly spat in the fact of two corrections officers while being escorted to his cell, kicked the two officers, and dislocated one man's thumb. (*Id.* ¶ 19). He had been assigned a "z" classification within the State Correctional system, which indicated that he was not to be housed with another inmate. (*Id.* ¶¶ 20–21).

The incident in question occurred on the first day that Defendant Cramer and Mr. Sherry were housed in the same cell. (*Id.* ¶ 25). Defendant Cramer assaulted Mr. Sherry, bound his hands, feet, and ankles with bed sheets and placed a sock gag in his mouth before continuing a further assault. (*Id.* ¶ 26). Mr. Cramer gave Mr. Sherry a last word, made him kiss his boot, then used a piece of bed sheet to strangle him to death, with such force that Mr. Sherry's hyoid bone was fractured. (*Id.* ¶¶ 27–29). Mr. Sherry's body was discovered by corrections officers around 9:34 p.m. (*Id.* ¶ 31). Mr. Cramer first informed corrections officers that Mr. Sherry had hung himself, but later admitted to having killed him, both to the corrections officers and to a fellow inmate named John Teston. (*Id.* ¶¶ 35, 40). Mr. Cramer wrote a letter to Mr. Teston in which he described Mr. Sherry as a "half-breed" who had a "n---er baby" and was cheating on his white girlfriend with a "full blooded n---er." (*Id.* ¶¶ 42–43). Mr. Cramer's letter also stated that Corrections Officer Frank had entered his cell the day of the murder to give him chewing tobacco, and that Corrections Officer Frank had told him that Mr. Sherry was a "half-breed" mongrel. (*Id.* ¶¶ 46–47). Mr. Cramer further related in his letter that Corrections Officer Frank had

3

"punched the shit out of this dude" and that they had "slapped him around for a few. (LOL)." (*Id.* ¶¶ 48–49).

Mr. Cramer was convicted of first degree murder in the death of Mr. Sherry, the cause of death having been manual strangulation. (*Id.* ¶¶ 53–54).

### b. Procedural history

Plaintiff, the Administratrix of Mr. Sherry's estate, filed a complaint against Defendants Cambria County, William Cramer and John Frank on February 19, 2014. (ECF No. 1). Cambria County and John Frank subsequently brought the instant motion to dismiss for failure to state a claim on April 25, 2014. (ECF No. 6). The motion is now ripe for disposition.

### IV. STANDARD OF REVIEW

A pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). A party may ask that a complaint or portion of a complaint be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In determining the sufficiency of the complaint, a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Threadbare recitals of the cause of action do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009). Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)). A complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678)).

In determining whether a plaintiff has shown a "plausible claim for relief" the Court must conduct a "context specific" inquiry that requires it to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document *integral to or explicitly relied* upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

If a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency.")).

**V. DISCUSSION**

   **a. The allegations set forth in the complaint**

Plaintiff brings these claims under the Eighth Amendment of the U.S. Constitution. (*Compl. ¶ 1*). Defendants argue that the Fourteenth, not the Eighth, Amendment to the U.S. Constitution applies to this claim, given that the Eighth Amendment's prohibition against cruel and unusual punishment does not attach until an inmate has been convicted and sentenced to a term of incarceration, and the complaint alleges that Mr. Sherry was incarcerated on a bench warrant for a parole violation. ([ECF No. 7 at 5](#)). Plaintiff's brief in opposition to Defendants' motion to dismiss acknowledges the need to assert the claims under the Fourteenth, rather than under the Eighth Amendment, and asks this Court for leave to file an amended complaint to correct this issue. ([ECF No. 9 at 2](#)).

As noted above, a court must permit curative amendment of a complaint, unless such an amendment would be inequitable or futile. *See Phillips*, 515 F.3d at 236. In light of the fact that the claim should properly have been brought under the Fourteenth Amendment, this Court will grant Plaintiff's request to file an amended complaint to address this deficiency.

   **b. The claim against Cambria County**

Plaintiff argues that Mr. Sherry had an Eighth Amendment right to be free from cruel and unusual punishment, and that this right was violated when he was brutally murdered by his cellmate. (*Compl. ¶¶ 57–58*). Plaintiff asserts that Cambria County is

responsible for this violation by having employed policies or customs that were deliberately indifferent to a substantial risk of harm to inmates such as Mr. Sherry, specifically by ignoring the inmate classification and related inmate information provided by the State Correctional System when an inmate was transferred from a state facility. (*[Compl. ¶¶ 59–60](#)*). Defendant Cramer was housed with another inmate despite a violent history and a "z" classification in the state system. (*[Compl. ¶ 61](#)*). Plaintiff argues that the placement of Mr. Cramer in a cell with Mr. Sherry, despite having faced charges for assault against prison guards, reflects a policy or custom of deliberate indifference toward the constitutional rights of Mr. Sherry, and that this deliberate indifference was the direct and proximate cause of the cruel and unusual punishment to which Mr. Sherry was subjected. (*[Compl. ¶¶ 62–64](#)*).

Defendants note that municipal liability must be based on a policy or custom that was the moving force in causing a violation of Mr. Sherry's constitutional rights, and that the complaint fails to identify a Cambria County policy that was the moving force in causing such a violation. ([ECF No. 7 at 7–9](#)). Defendants argue that there is no legal basis for Plaintiff's allegation that Mr. Sherry's placement in a cell with Mr. Cramer evidenced a policy or custom of ignoring the inmate classification and related information provided by the State Correctional System. (*[Id. at 11](#)*). Defendants note that there is no statutory or constitutional prohibition that requires a county jail not to place another inmate in a "z"-coded inmate's cell. (*[Id. at 9](#)*). They further observe that the fact that a z code has been assigned to an inmate does not mean that an inmate is by definition too dangerous to be housed with another inmate. (*[Id. at 10](#)*). According to Defendants, "z" codes are also

7

assigned to individuals without violent tendencies. (*Id*.). Defendants note that the "z" code is a state system designation, and that Plaintiff has not shown any authority in her complaint holding that a county jail was required to single cell an inmate that the state Department of Corrections had "z" coded. (*Id.* at 11). Defendants also argue that Mr. Cramer's violent history is insufficient, alone or in combination with the alleged "z" code classification, to prevent a county jail from placing another inmate in his cell. (*Id.*).

A local government may only be held responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Soc. Servs. Of City of New York,* 436 U.S. 658, 694 (1978). A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Id*. In addition, there must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989).

A plaintiff can establish municipal liability under § 1983 by proving either a policy or custom. *Watson v. Abington Tp.*, 478 F.3d 144, 155 (3d Cir. 2007). Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)). A custom, on the other hand, can be proven by showing that a course of conduct, though not authorized by law, constitutes a practice of state officials that is "so permanent and well settled" as to virtually constitute law. *Id*. (citing *Monell,* 436 U.S. at 690).

The plaintiff must "show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Id*. Once the trial judge has identified those officials whose decisions represent the official policy of the local government unit, "it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur" or "by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (citing *Monell,* 436 U.S. at 661, n.2, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 485–487 (1986) (White, J., concurring)).

The determination of who is a "policymaker" is a question of state law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). The Court in *Praprotnik* noted that:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.

*Id.* at 127.

In order to establish municipal liability, the plaintiff must also "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997). The plaintiff must therefore "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Where a plaintiff seeks to establish municipal liability on the theory that a facially lawful municipal action has led an

9

employee to violate a plaintiff's rights, he must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407, citing *Canton,* 489 U.S. at 388. It is not sufficient to show simple or even heightened negligence. *Id.*

In order to survive this motion to dismiss, the Court must find that the facts pled give rise to a plausible claim for relief. Plaintiff has alleged that Defendant Cambria County employed a policy or custom of ignoring inmate classification and related inmate information provided by the State Correctional System when an inmate was transferred from a state facility. (*[Compl. ¶ 60](Compl. ¶ 60)*). Plaintiff's complaint does not allege facts that support the existence of such a policy or custom of ignoring inmate classifications, other than the fact that Mr. Sherry was housed with an inmate holding a "z" classification. The complaint does not plead facts that indicate that a policymaker with final decisionmaking authority issued a policy or edict regarding the housing of prison inmates. *See Andrews*, 895 F.2d at 1480. Nor does the complaint indicate that a policymaker had acquiesced in a widespread practice of ignoring inmate classifications and housing violent inmates together with other inmates that was so permanent and well settled as to constitute a custom or usage with the force of law. *See Praprotnik*, 485 U.S. at 127. The simple allegation that the housing of Mr. Sherry together with Mr. Cramer constituted a policy or custom of ignoring inmate classifications is not sufficient to establish a plausible claim for relief against Cambria County. Moreover, the complaint fails to allege sufficient facts to establish a plausible claim that this policy or custom was the moving force behind the violation of Mr. Sherry's constitutional rights.

The Court will grant Plaintiff leave to amend the complaint and to plead additional facts in support of its § 1983 claim against Cambria County in order to address these deficiencies.

### c. The claims against Officer Frank in his official and personal capacity

Plaintiff asserts that Officer Frank acted under color of State law in his position as Corrections Officer. (*Compl. ¶ 66*). The complaint alleges that Corrections Officer Frank supplied Mr. Cramer with false information about Mr. Sherry, that he participated in an assault on Mr. Sherry, and that such actions were taken with deliberate indifference towards Mr. Sherry's constitutional right to be free from cruel and unusual punishment. (*Compl. ¶¶ 68, 70, 72*). The complaint concludes that Corrections Officer Frank's actions were the direct and proximate cause of the cruel and unusual punishment to which Mr. Sherry was subjected. (*Compl. ¶ 73*). Plaintiff asserts that these actions were committed with malice and a willful disregard for Mr. Sherry's federally protected rights. (*Compl. ¶ 74*).

The complaint does not distinguish between claims against Officer Frank in his individual or official capacity. (*Compl. ¶¶ 65–74*). A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Such a suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n. 55.

Insofar as Plaintiff asserts a claim against Corrections Officer Frank in his official capacity, it is tantamount to a claim against Cambria County, and the same considerations as above apply regarding Plaintiff's failure to plead sufficient facts to make a plausible claim for relief against Cambria County. As noted above, Plaintiff will be permitted to plead additional facts to address this deficiency.

Defendants argue that there is insufficient causation to proceed with the claim against Officer Frank in his personal capacity. They argue that the reason why Mr. Cramer murdered Mr. Sherry is that Mr. Sherry had attacked him with a sharpened toothbrush while he was using the toilet, and that there is no allegation that the murder was planned or imminent. ([ECF No. 7 at 13](#)).

Personal capacity suits against government officers seek to impose individual liability on them for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To establish personal liability under § 1983, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). This stands in contrast to the official-capacity action, which, as outlined above, provides that a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *See Monell*, 436 U.S. at 694.

A court may find that a prison official has acted recklessly in disregarding the potential violence between a known violent inmate and a known likely victim. *See Davidson v. Cannon*, 474 U.S. 344, 357 (1986) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). Plaintiff's complaint asserts that supplying Mr. Cramer with false information about Mr.

Sherry's personal and criminal history as well as his participation in an assault against Mr. Sherry were the direct and proximate cause of Mr. Sherry's constitutional deprivations. (*Compl.* ¶¶ 68–73). These factual allegations, on their own, are not sufficient to establish a plausible claim that Corrections Officer Frank was the cause of the deprivation of Mr. Sherry's federal rights. The complaint does not allege that Officer Frank had knowledge of Mr. Sherry's violent tendencies, or that his interactions with Mr. Cramer were the cause of Mr. Cramer's assault against Mr. Sherry.

To the extent that the complaint asserts a claim against Corrections Officer Frank in his personal capacity, it has not made a sufficient showing that Corrections Officer Frank's actions were the cause of the of the cruel and unusual punishment to which Mr. Sherry was subjected. Plaintiff will be granted leave to amend the complaint to allege further facts in support of its allegations of a causal connection between Officer Frank's actions and Mr. Sherry's constitutional deprivations.

## VI. CONCLUSION

For the reasons above, the Court will grant Defendant's motion to dismiss. However, Plaintiff will be allowed to amend the complaint to address the deficiencies outlined above.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA R. HUEY, | ) | |
| | ) | CIVIL ACTION NO. 3:14-30 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| CAMBRIA COUNTY et al, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

NOW, this 14th day of January 2015, upon consideration of Defendants' Motion to Dismiss (ECF No. 6), **IT IS HEREBY ORDERED** that the motion is **GRANTED**, and Plaintiff is granted leave to amend her complaint within 21 days of this Order.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE