IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA R. HUEY, *in her capacity as* Administratrix of the ESTATE of WILLIAM H. SHERRY, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CAMBRIA COUNTY, *a municipality*, JOHN FRANK, *an individual*, and WILLIAM CRAMER, *an individual*, | ) ) ) ) |
| Defendants. | ) |

CIVIL ACTION NO. 3:14-30

JUDGE KIM R. GIBSON

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter comes before the Court upon consideration of Defendants' motion to dismiss Plaintiff's First Amended Complaint for failure to state a claim. (ECF No. 29). Plaintiff initially filed a complaint against Defendants Cambria County, William Cramer and John Frank on February 19, 2014. (ECF No. 1). The Court granted Defendants' motion to dismiss the complaint, but granted Plaintiff leave to amend. (ECF No. 27). Plaintiff filed a First Amended Complaint on February 4, 2015. (ECF No. 28). Defendants now move to dismiss the First Amended Complaint. (ECF No. 29). Defendants argue that Plaintiff's First Amended Complaint still fails to state a viable claim against Cambria County and Corrections Officer Frank. (ECF No. 30 at 2).

1

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims were brought under 42 U.S.C. § 1983. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events and occurrences giving rise to the claims arose in the Western District of Pennsylvania and the Defendants reside within the district.

## III. BACKGROUND

### a. Statement of Facts

The Court will briefly set out the facts of this case. A detailed description of the factual background is provided in this Court's earlier Memorandum Opinion. (ECF No. 27 at 2).

William Sherry ("Sherry") was housed in a cell in the Disciplinary Housing Unit in Cambria County Prison with Defendant William Cramer ("Cramer"), who had been assigned a "z" classification within the State Correctional system because of his violent history. (ECF No. 28 at ¶ 21). According to the Amended Complaint, the classification indicated that Defendant Cramer was not to be housed with another inmate and was "physically provided," along with the reasoning therefor, to the Cambria County Prison by employees of the Pennsylvania Department of Corrections upon Defendant Cramer's transfer to the Cambria County Prison. (*Id.* at ¶ 23). On their first day housed together, Defendant Cramer assaulted Sherry by binding his hands, feet, and ankles with bed sheets and placing a sock gag in his mouth before continuing a further assault. (*Id.* at ¶¶

26–27). Defendant Cramer used a piece of bed sheet to strangle Mr. Sherry to death. (*Id.* at ¶ 29).

Defendant Cramer communicated the details of the murder to John Teston, an inmate who was housed next to Defendant Cramer, through an air vent and via a letter. (*Id.* at ¶ 44). He wrote that "there's 4 things I hate the most, a n---er, a half-breed, a n---er lover, and someone who associates with em." (*Id.* at ¶ 46). Defendant Cramer also described Corrections Officer Frank ("CO Frank") as "one of us" and "a skin." (*Id.* at ¶ 48). He stated that CO Frank had entered his cell earlier in the day and had informed him that Sherry was a "half-breed mongrel," which Mr. Cramer had previously been unaware of. (*Id.* at ¶¶ 49–51). At Defendant Cramer's criminal trial, CO Frank testified that he had in fact entered Defendant Cramer and Sherry's cell around 6:30 p.m. (*Id.* at ¶ 55). At the bottom of the letter to Mr. Teston, Defendant Cramer wrote "Pearl Kings" surrounded by two swastikas. (*Id.* at ¶ 57).

**IV. STANDARD OF REVIEW**

This Court's previous Memorandum Opinion set out the standard of review for a motion to dismiss. (ECF No. 27 at 4). It will not be restated here.

**V. DISCUSSION**

   a. **Defendants' motion to dismiss**

Defendants argue that the First Amended Complaint fails to state a claim against Cambria County because it fails to identify a Cambria County policy or custom that was the moving force in causing a violation of Sherry's constitutional rights. (ECF No. 30 at 4).

3

Defendants also argue that the First Amended Complaint fails to state a claim against CO Frank in his personal capacity. (*Id.*)

   b. **Policy or custom**

The Court must determine whether or not Plaintiff's Amended Complaint states a plausible claim for relief against Defendants. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). Plaintiff has alleged municipal liability in this case, which requires a demonstration that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *See Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff's Amended Complaint adds the allegation that "[a]lthough this is only one extreme example of the alleged policy or custom, it is believed and therefore averred that discovery will reveal a multitude of such instances." (ECF No. 28 at ¶ 69). In response to Defendants' motion to dismiss, Plaintiff asserts that the facts alleged in the Amended Complaint "raise a reasonable expectation that discovery will reveal evidence of the necessary element." (ECF No. 31 at 3, citing *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)).

The Eighth Amendment's Cruel and Unusual Punishment Clause imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, as the Amended Complaint notes, the claim here must be brought under Fourteenth Amendment because Sherry had not yet been convicted and sentenced

for his crimes. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005)). An unsentenced inmate is, at a minimum, entitled to no less protection than a sentenced inmate is entitled to under the Eighth Amendment. *Id.* (citing *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)). Where the alleged Eighth Amendment violation concerns a prisoner's conditions of confinement or protection provided him against other inmates, the requisite state of mind is that of deliberate indifference. *Schwartz v. Cnty. of Montgomery*, 843 F. Supp. 962, 970 (E.D. Pa. 1994) *aff'd*, 37 F.3d 1488 (3d Cir. 1994). A § 1983 cause of action will not lie under the Eighth or the Fourteenth Amendments where a government official is merely negligent in causing the injury. *Id.* at 971.

Applying all of the foregoing legal principles to the facts pled in the Amended Complaint, the Court notes that the essence of Plaintiff's Complaint is that the prison violated Sherry's constitutional rights by housing him with an inmate whom they knew to have a "z" classification in the state prison system. Defendant Cramer was transferred to the Cambria County prison to "face charges that he assaulted two corrections officers while housed at SCI-Cresson." (ECF No. 28 at 4). Plaintiff's Amended Complaint adds that Defendant Cramer's "z" classification, as well as the reasoning therefor, were "physically provided" to the Cambria County Prison by the Pennsylvania Department of Corrections when Defendant Cramer was transferred to the Cambria County Prison. (*Id.*). Defendant Cramer also expressed in a letter that "there's 4 things [he] hates the most, a n---er, a half breed, a n---er lover, and someone who associates with them." (*Id.* at ¶ 46). Plaintiff has not alleged that the prison was aware of Defendant Cramer's white

supremacist beliefs. However, Plaintiff has alleged that the prison was aware of Defendant Cramer's violent tendencies towards corrections officers. The mere fact that Mr. Cramer had a "violent history" is not a sufficient basis for a failure to protect claim against prison officials. *Bistrian*, 696 F.3d at 371. However, the Court finds that Plaintiff shall be granted the opportunity to proceed with discovery at this point in order to uncover further evidence about the prison's knowledge of Defendant Cramer's violent tendencies and its alleged policies regarding violent inmates.

The Court notes that it found in its earlier Memorandum Opinion that Plaintiff had failed to plead sufficient facts to establish a plausible claim for relief based on the municipality's alleged policy or custom of ignoring inmate classification. While one incident is insufficient evidence of such a policy or custom, the Court finds that the Plaintiff shall be given an opportunity to conduct discovery in order to substantiate the claim that this is but one extreme example of many of the prison's alleged policy towards known violent offenders.

"[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County*, 520 U.S. at 404. At this stage in the litigation, it is too early to determine whether or not the prison's alleged policy was or was not the moving force in causing the constitutional violation. Thus, while Defendants reassert that Plaintiff has failed to establish a causal connection between the alleged policy and Sherry's injury, the Court finds that Plaintiff should be allowed to proceed with

discovery in order to determine any possible connection between Defendant Cramer's violent tendencies and Sherry's death.

### c. The claim against Corrections Officer Frank in his personal capacity

To state a claim against a prison official for damages for failure to protect from inmate violence, an inmate must plead facts that show that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian*, 696 F.3d at 367 (citing *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997)).

In order to prove deliberate indifference, which is a subjective standard, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* at 367 (quoting *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). It is not sufficient that an official should have known of the risk, though a plaintiff can prove an official's actual knowledge of a substantial risk to his safety in the usual ways, including inference from circumstantial evidence. *Id.* (citing *Beers–Capitol*, 256 F.3d at 133; *Farmer*, 511 U.S. at 842). Thus, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (citing *Farmer*, 511 U.S. at 842).

Prison officials may also escape liability for deliberate indifference claims by showing that "they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew

7

the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* (quoting *Farmer*, 511 U.S. at 844). Prison officials who actually knew of a substantial risk to inmate health or safety may also be found free from liability if they responded reasonably to the risk, even if the harm was ultimately not averted. *Id.*

Plaintiff has pled sufficient facts to state a plausible claim for relief against Officer Frank. Plaintiff claims that Officer Frank provided Defendant Cramer with information that Sherry was a "half-breed mongrel" and had a "n---er baby." (ECF No. 28 at ¶ 78). Defendant Cramer's letter specifically referred to this information as the reason why he killed Mr. Sherry. (*Id.* at ¶ 79). The Court finds that the facts alleged, and the information provided to Defendant Cramer by CO Frank, are sufficient to establish a reasonable inference that he had actual knowledge of a substantial risk that Defendant Cramer would do violence to Sherry. The Amended Complaint lays out the false information that Officer Frank allegedly provided Defendant Cramer with. At this stage in the pleadings, the Court finds that Plaintiff should be allowed to proceed with discovery in order to substantiate her claim and establish a causal connection between CO Frank's conduct and Sherry's constitutional violations.

**VI. CONCLUSION**

For the reasons above, the Court will deny Defendants' motion to dismiss. The Court finds that Plaintiff has alleged sufficient facts to establish a plausible claim for relief.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA R. HUEY, *in her capacity as Administratrix of the ESTATE of WILLIAM H. SHERRY,* <br><br> Plaintiff, <br><br> v. <br><br> CAMBRIA COUNTY, *a municipality,* JOHN FRANK, *an individual,* and WILLIAM CRAMER, *an individual,* <br><br> Defendants. | CIVIL ACTION NO. 3:14-30 <br><br> JUDGE KIM R. GIBSON |

## ORDER

AND NOW, this 12th day of June, 2015, upon consideration of Defendants' motion to dismiss Plaintiff's First Amended Complaint (ECF No. 29), it is **HEREBY ORDERED** that the motion is **DENIED**.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE